UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CARMEN R.,

                                               **Plaintiff**,

                           v.                                                                   5:21-CV-432 (FJS)

COMMISSIONER OF SOCIAL SECURITY,

                                               **Defendant**.

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **OLINSKY LAW GROUP**<br>250 South Clinton Street<br>Suite 210<br>Syracuse, New York 13202<br>Attorneys for Plaintiff | **HOWARD D. OLINSKY, ESQ.** |
| **SOCIAL SECURITY ADMINISTRATION**<br>J.F.K. Federal Building, Room 625<br>15 New Sudbury Street<br>Boston, Massachusetts 02203<br>Attorneys for Defendant | **LOUIS JOHN GEORGE, SAUSA** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff Carmen R. brought this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for benefits. *See generally* Dkt. Nos. 1, 16. Pending before the Court are the parties' cross-motions for judgment on the pleadings brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 16, 17.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff brought her current claim for disability insurance benefits and supplemental security income on July 19, 2016, alleging disability as of May 1, 2016.  *See* Dkt. No. 11, Administrative Record ("AR"), at 240.[1]  Defendant initially denied Plaintiff's claim for benefits on September 9, 2016.  *See id.* at 135.  Plaintiff then filed her first of several requests for a hearing on October 11, 2016.  *See id.* at 141.  Ultimately, Plaintiff voluntarily waived in writing her right to personally appear and testify at a hearing, and the Administrate Law Judge ("ALJ") issued a decision pursuant to the provisions of 20 C.F.R. §§ 404.948(b) and 416.1448(b).  *See id.* at 101.  That ALJ, Elizabeth Koennecke, ultimately concluded in her April 19, 2018 decision that Plaintiff was not disabled and that there were jobs that existed in significant numbers in the national economy that she could perform.  *See id.* at 121-22.

The Appeals Council granted Plaintiff's request for review based on her challenge to the manner in which the ALJ was appointed under the Appointments Clause of the Constitution, U.S. Const. Art. II, § 2, cl. 2.  *See id.* at 132.  The Appeals Council vacated the hearing decision and remanded this case for further proceedings, asserting that the defect was cured because, on July 16, 2018, the Acting Commissioner of Social Security ratified all ALJ appointments and approved them as her own under the Constitution.  *See id.*  The Appeals Council then indicated that the ALJ must offer Plaintiff an opportunity for a hearing and "take any further action needed to complete the administrative record and issue a new decision."  *See id.* at 133.  As a result, Plaintiff appeared at a telephone hearing, due to the COVID-19 pandemic, on May 19,

---

[1] All references to page numbers in the Administrative Record are to the Bates Stamp numbers in the bottom right corner of those pages.  All references to page numbers in other documents in the record are to the page numbers that the Court's ECF system generates, which appear in the top right corner of those pages.

2020, before ALJ John P. Ramos. *See id.* at 39. Plaintiff's attorney and Whitney Eng, a vocational expert, also appeared at the hearing. *See id.*

On June 11, 2020, ALJ Ramos issued a written decision on remand from the Appeals Council, in which he made the following findings "[a]fter careful consideration of the entire record…"

1) Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2022."

2) Plaintiff "has not engaged in substantial gainful activity since May 1, 2016, the alleged onset date."

3) Plaintiff "has the following severe impairments: degenerative disc disease of the lumbar spine, obesity, headaches, anxiety, depression, and post-traumatic stress disorder (PTSD)."

4) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."

5) Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows. She cannot continuously bend, lift, or reach. She retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; and regularly attend to a routine and maintain a schedule. She can complete simple tasks without the need for frequent supervision, and can interact with supervisors on an occasional basis throughout the workday after learning her job duties from a brief demonstration or instructional period. She can work in proximity to coworkers, but she is limited to occasional simple interactions with them. She should have no more than occasional brief interactions with the public. She can make decisions directly related to the performance of simple work, and can handle usual workplace changes and interactions associated with simple work. She should work in a position where she is not responsible for the work of others, or is required to supervise others. She should work in a position with little change in daily work processes or routines."

    6) Plaintiff "is unable to perform any past relevant work."

    7) Plaintiff "was born on February 2, 1966 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date."

    8) Plaintiff "has at least a high school education and is able to communicate in English."

    9) "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills."

    10) "Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."

    11) Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 1, 2016, through the date of this decision."

*See* AR at 17-27 (citations omitted).

Plaintiff then commenced this action on April 15, 2021, filing a supporting brief on February 25, 2022. *See* Dkt. Nos. 1, 16. Defendant filed a responsive brief on April 11, 2022. *See* Dkt. No. 17. In support of her motion, Plaintiff argues that ALJ Ramos did not properly evaluate and explain his analysis for finding Plaintiff's treating physician's opinion from April 2020 unpersuasive. *See* Dkt. No. 16 at 11-15.

### III. DISCUSSION

**A. Standard of review**

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). Accordingly, a reviewing court "'may not substitute [its] own judgment for that of the [Commissioner], even if [it] might justifiably have reached a different result upon a de novo review.'" *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 52 (2d Cir. 2016) (Summary Order) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)). In other words, "[t]he substantial evidence standard means once an ALJ finds facts, [a reviewing court may] reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation and other citation omitted).

To be eligible for benefits, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability "to engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

1) The ALJ first determines whether the claimant is currently engaged in SGA. *See* C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).

2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id.*

3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).

    4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do her past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(f).

    5) If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her RFC, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then she is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is only entitled to receive benefits if she cannot perform any alternative gainful activity. *See id.*

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (citation omitted).

**B. Whether ALJ Ramos properly considered and weighed Dr. Hegland's opinions**

    Plaintiff argues that ALJ Ramos failed to follow the "treating physician rule" when he formulated his RFC finding.[2] *See* Dkt. No. 16 at 11-15. "That rule mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *see* 20 C.F.R. § 416.927(d)(2) (eff. 2016). However, treating physicians are "'not afforded controlling weight where … the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.'" *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (summary order) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curium)). An ALJ may also properly afford less than controlling weight to a treating physician's medical source

---

[2] Notably, the agency adopted new regulations that eliminated the treating physician rule for claims filed after March 27, 2017. *See* 20 C.F.R. §§ 404.1527, 416.927. Since Plaintiff filed this claim in July 2016, the treating physician rule still applies.

- 6 -

statement where the "medical source statement conflict[s] with his own treatment notes[.]" *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order).

An ALJ who refuses to give controlling weight to a treating physician's opinion must consider various "factors" to determine how much weight to give that opinion. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). These factors include the following: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Id.* The Second Circuit has held, however, that ALJs are not required to evaluate each of these factors individually in their decisions. *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004) (per curiam) (affirming ALJ opinion which did "not expressly acknowledge the treating physician rule," but where "the substance of the treating physician rule was not traversed")).

In this case, Plaintiff's treating physician, Erika Hegland, D.O., rendered three opinions with respect to Plaintiff's condition in September 2018, December 2019, and April 2020. *See* AR at 778-781, 783-784, 790-791. In September 2018, Dr. Hegland diagnosed Plaintiff with anxiety, depression, and sciatica, which caused depressed mood, panic attacks, and numbness and pain in her back. *See id.* at 783. On a check-box form, she checked that Plaintiff was moderately limited in standing, walking, sitting, lifting, carrying, pushing, pulling, bending, climbing stairs, following and understanding simple instructions, performing low-stress tasks independently, interacting with others, maintaining socially appropriate behavior, maintaining a schedule, maintaining attention and concentration for rote tasks, maintaining basic standards of

personal hygiene and grooming, and functioning in a work setting. *See id.* at 783. Dr. Hegland also opined that Plaintiff was not permanently disabled but should not do any activity except treatment or rehabilitation for a period of 6 to 11 months. *See id.* at 784.

In her December 2019 opinion, Dr. Hegland again indicated that Plaintiff suffered from sciatica pain and had decreased range of motion. *See id.* at 790. She also found that Plaintiff was moderately limited in some tasks, although she found that Plaintiff was not limited in seeing, hearing, or speaking, or in any of the cognitive abilities in which she previously found Plaintiff to be moderately limited. *See id.* Furthermore, she concluded that Plaintiff was not disabled but should not do any activity except for treatment or rehabilitation for "7+ months." *See id.* at 791.

In her April 2020 medical source statement, Dr. Hegland diagnosed Plaintiff with back pain and chronic headaches. *See id.* at 778. She indicated that Plaintiff could sit for 30 minutes at a time and stand for 20 minutes at a time, both of which she could do for up to two hours total in an eight-hour workday. *See id.* at 778-779. Dr. Hegland noted that Plaintiff would need to shift positions at will from sitting, standing, or walking, but she did not need a cane or assistive device to walk. *See id.* at 779. She also remarked that Plaintiff could never lift twenty pounds or more, stoop, bend, crouch, squat, climb ladders, or climb stairs. *See id.* Dr. Hegland further noted that Plaintiff could occasionally twist and lift ten pounds or less. *See id.* According to Dr. Hegland, Plaintiff could "frequently" look up and down, turn her head left or right, hold her head in a static position, grasp, turn, or twist objects with her hands, do fine manipulations with her fingers, and reach (including overhead) with her arms. *See id.* Dr. Hegland remarked that Plaintiff would need to take unscheduled thirty-minute breaks daily during an eight-hour workday, and Plaintiff would be off-task more than twenty percent of the time. *See id.* at 780.

Dr. Hegland also concluded that Plaintiff's impairments caused "good" and "bad" days, and she would likely be absent from work more than four days per month. *See id.* Finally, Dr. Hegland remarked that Plaintiff "need[ed] frequent position changes and breaks due to pain." *See id.*

In his decision, ALJ Ramos summarized Dr. Hegland's opinions and noted that "Dr. Hegland's assessments indicate[d] that [Plaintiff's] physical functioning declined significantly between December 2019 and April 2020: in December 2019, she assessed [Plaintiff] to be moderately limited, and four months later, she assessed limitations that suggest [Plaintiff] [was] nearly bedridden." *See id.* at 24. ALJ Ramos remarked that Dr. Hegland "gave no explanation for such a significant decline in functioning." *See id.* He then gave Dr. Hegland's September 2018 and December 2019 assessments of "moderate" limitations "great weight" because they were "consistent with the results of Dr. Lorensen's consultative examination, with the many unremarkable musculoskeletal and neurological findings made by Dr. Hegland and [Plaintiff's] other providers, with the results of the EMG and MRI, and with [Plaintiff's] daily activities." *See id.* (citations omitted). ALJ Ramos found that the same evidence was "inconsistent with the extreme limitations Dr. Hegland assessed in April 2020." *See id.* As such, he gave Dr. Hegland's 2020 opinion "little weight." *See id.* Finally, with respect to Dr. Hegland's assessments regarding Plaintiff's psychological limitations, ALJ Ramos gave those assessments "some weight" insofar as they were consistent with the evidence showing that Plaintiff experienced symptoms commonly associated with anxiety and depressive disorders, benefitted from treatment, and exhibited normal cognition in examinations. *See id.* at 25. However, ALJ Ramos noted that nothing in the record suggested that Dr. Hegland had any expertise in psychiatry or psychology. *See id.*

In her treatment records, Dr. Hegland first noted in April 2018 that Plaintiff suffered from acute right-sided low back pain with right-sided sciatica. *See id.* at 737. Plaintiff experienced decreased range of motion and tenderness in her lumbar back with pain to palpation and worsening back pain, but she denied numbness perianally or worsening weakness. *See id.* at 734-735. Plaintiff wanted to increase her pain medication and get an injection in her back but needed physical therapy first, which she stopped attending because it required her to take two different buses to get there. *See id.* at 734. In subsequent examinations in 2018 and 2019, Dr. Hegland noted that Plaintiff suffered from decreased range of motion, tenderness, and pain in the lumbar spine, but she did not exhibit bony tenderness, swelling, or deformity; Plaintiff also had lateral numbness of the right leg down to her heel. *See id.* at 713, 728. With respect to her back pain, Dr. Hegland noted that it was a chronic problem, unchanged, the pain was present constantly and Plaintiff described it as burning, shooting, and stabbing, and it radiated to the right foot. *See id.* at 712, 727. Treatment provided no relief. *See id.* Plaintiff complained that the pain was worse at night, her symptoms were aggravated when laying down, and she also had some leg pain and numbness associated with it. *See id.* at 722, 727. Plaintiff also experienced back spasms. *See id.* at 713. Plaintiff occasionally exhibited decreased range of motion and tenderness in her cervical spine as well. *See id.* at 708. In 2020, Dr. Hegland noted that Plaintiff's lumbar spine was tender, but she had normal range of motion. *See id.* at 696. In addition to her backaches, Plaintiff also suffered from anxiety and chronic headaches, which improved with treatment. *See id.* at 694-701.

Elke Lorensen, M.D., a consultative examiner, remarked in August 2016 that Plaintiff complained of back pain that began one year earlier, was not chronic, and had not seen a doctor until recently. *See id.* at 457. Dr. Lorensen noted that Plaintiff's back pain was brought on by

prolonged walking, standing, and sitting, and it was located in the area of the lower lumbar spine. *See id.* Dr. Lorensen further commented that Plaintiff complained of the pain radiating down her right leg when she walked. *See id.* Plaintiff was not receiving any treatment at that time. *See id.* Plaintiff reported her activities of daily living to Dr. Lorensen as cooking five times per week, cleaning, doing laundry, shopping twice per week, showering and dressing daily, watching television, listening to the radio, and reading. *See id.* at 458. Upon examination, Dr. Lorensen remarked that Plaintiff did not appear to be in acute distress, had a normal gait, could walk on her heels and toes without difficulty, had a normal stance, did not use assistive devices, did not need help changing for the exam or getting on or off the table, and was able to rise from her chair without difficulty. *See id.* He also noted that Plaintiff could squat at 40%, her cervical spine had full flexion, extension, and lateral function bilaterally, she had full rotary movement, and she did not have scoliosis, kyphosis, or abnormalities in the thoracic spine. *See id.* at 458-459. Dr. Lorensen reported that Plaintiff's lumbar spine flexion was 70 degrees and her extension and lateral flexion were 20 degrees bilaterally. *See id.* at 459. The straight leg raise test was negative bilaterally, and Plaintiff had forward elevation and abduction of her shoulders to 120 degrees bilaterally. *See id.* She also had full range of motion in her elbows, forearms, and wrists, 80 degrees of hip flexion bilaterally, 130 degrees of knee flexion bilaterally, and full range of motion in her ankles. *See id.* Plaintiff did not have any evident subluxations, contractures, ankylosis, or thickening; her joints were stable and nontender, and she had no redness, heat, swelling, or effusion. *See id.* She also had full strength in her upper and lower extremities upon neurologic testing. *See id.* Dr. Lorensen diagnosed Plaintiff with back pain, intermittent numbness of the left arm, and obesity; and he found that Plaintiff did not have any gross limitations to sitting, standing, walking, or handling

small objects with the hands. *See id.* at 459-460. Dr. Lorensen further noted that Plaintiff had moderate limitations in bending, lifting, and reaching. *See id.* at 460.

  Plaintiff's lumbosacral spine x-ray showed that there was no significant bony abnormality, the pedicles were intact, and the height of the vertebral bodies and intervertebral disc spaces were relatively well-maintained. *See id.* at 461. Plaintiff's cervical spine x-ray showed moderate narrowing of the C5-C6 and C6-C7 disc spaces, moderate straightening, but no compression fracture. *See id.* at 462. An MRI of Plaintiff's lumbar spine showed that her alignment was intact, there were no pathologic signal abnormalities of the lumbar vertebra, she had minimal fatty infiltration, her spinal canal was widely patent throughout, and she had no spinal or foraminal stenosis. *See id.* at 536. However, the MRI did show a very small left paracentral disc protrusion at L1-2 with very minimal mass effect upon the thecal sac and severe hypertrophic changes at the facet joints at L4-5 and L5-S1. *See id.* Plaintiff's EMG study was also normal, revealing no evidence of the lumbar motor radiculopathy, peripheral nerve entrapment, or peripheral polyneuropathy. *See id.* at 623. Given Plaintiff's symptoms and the lumbar MRI findings, Rina Davis, M.D., the doctor who conducted the EMG, recommended facet median branch blocks for Plaintiff's symptoms. *See id.*

  At the hearing, Plaintiff testified that she babysat two children, ages nine and thirteen, within the past year, took medical cabs to her doctors' appointments, and took a cab to get groceries. *See id.* at 44-45, 49-51. Plaintiff stated that she had a lot of help around the house from her nineteen-year-old daughter and that she would do "half" of the household chores like laundry and groceries and her daughter would finish the chores for her. *See id.* at 50. Plaintiff stated that she could carry somewhere between five and eight pounds, but she knew from the ten-pound bag of rice that she usually bought that she could not carry it. *See id.* at 51. She

stated that she could sit in a firmer chair for approximately 20 minutes.  *See id.*  She also had a hard time getting out of bed and getting dressed in the morning because she had trouble sleeping which caused the pain to "really kick[] in."  *See id.*  Plaintiff explained that she did not like to leave the house due to PTSD from a traumatic incident as a child, but she was working on slowly going out in public with help from her therapist.  *See id.* at 52.  Plaintiff also testified that she had migraines approximately three times per week, which lasted between 40 and 45 minutes and were caused by stress and anxiety; the migraines improved some with a magnesium supplement.  *See id.* at 53.  Plaintiff testified that she also suffered from depression, which started when her back began hurting because she could not do "the stuff that [she] would love to do," like play with her two-year-old grandson or visit her other children in New York.  *See id.* at 54.  Plaintiff explained that she would get very moody every now and then, which appeared random.  *See id.*  She also stated that she used a cane sometimes when she went to the grocery store or the mall.  *See id.* at 55.

ALJ Ramos clearly explained his reasoning for affording "great weight" to Dr. Hegland's September 2018 and December 2019 opinions that Plaintiff had "moderate" physical limitations, as they were consistent with her own and Dr. Lorensen's findings, Plaintiff's physical exams and diagnostic tests, and Plaintiff's self-reported activities of daily living.  *See id.* at 24.  Notwithstanding the fact that ALJ Ramos afforded those opinions "great weight," Plaintiff challenges his decision to afford Dr. Hegland's April 2020 opinion "little weight" and argues that ALJ Ramos "cherry-picked" evidence to support his conclusion while ignoring evidence to the contrary.  *See* Dkt. No. 16 at 12-14.  However, ALJ Ramos was not required to give Dr. Hegland's April 2020 opinion controlling weight under the treating physician's rule if

he articulated that it was inconsistent with Dr. Hegland's own treatment records or not substantially supported by other evidence in the record.

ALJ Ramos properly explained that both issues existed; Dr. Hegland's April 2020 opinion was inconsistent with her treatment notes for Plaintiff and was not supported by the evidence in the record. *See id.* at 24. ALJ Ramos noted that Dr. Hegland gave no explanation for the "significant decline" in Plaintiff's physical abilities in the four-month timespan from December 2019 until April 2020, and Dr. Hegland's treatment notes did not describe Plaintiff as someone who was "nearly bedridden." *See id.* In fact, he noted that Dr. Hegland's own records included unremarkable musculoskeletal and neurological findings, and other providers' assessments made those same findings. *See id.* Furthermore, he pointed to the EMG and MRI results, Dr. Lorensen's findings, and Plaintiff's activities of daily living, as discussed above, to support his rejection of Dr. Hegland's April 2020 opinion. From its review of the record, the Court finds that, although Plaintiff had "moderate" limitations in functioning due to her back pain, she did not have "severe" limitations that made her completely disabled, and the substantial evidence in the record clearly supports ALJ Ramos's RFC finding that Plaintiff can perform light work with limitations on bending, lifting, reaching, and mental limitations. Notably, that RFC is consistent with Dr. Hegland's September 2018 and December 2019 opinions, to which ALJ Ramos gave "great weight." Thus, the Court finds that ALJ Ramos did not err in concluding that Dr. Hegland's April 2020 opinion was inconsistent with her own treatment records and the substantial evidence in the record.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 16, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 17, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: September 19, 2022
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge